Nott, Ch. J.,
delivered the opinion of the court:
On the 25th December, 1799, when the French constitution of that year went into effect, the French Government abolished all prize courts; that is to say, the jurisdiction of prize cases was taken away from judicial tribunals. For a few years France had been trying provisionally the English and American system of prize courts wherein the legal rights of captors and owners are judicially passed upon according to the principles of international law or the obligations of treaties. With the doing away of that jurisdiction, the disposition of prize cases was vested in the political branch of the French Government. The Consuls themselves, with their administrative subordinates, constituted the only existing authorities in such cases, until the establishment of the Council of Prizes. The Council of Prizes acted under instruction of the Government, and when instructed made its decisions accordingly, ■and was, in effect, nothing more than an administrative bureau of the Government. The counsel for the United States has presented to the court a most elaborate argument upon this subject, and the court has no reason to doubt the accuracy of the laws, decrees, and orders therein contained, and, indeed, adopts its conclusion.
On the 27th of July, 1800, the American brig North Carolina, West, master, while peacefully pursuing a commercial voyage from Newbern to Antigua, laden with lumber, pork, and corn, was unlawfully seized upon the high sea by the French privateer La Mars and taken into the Swedish island of St. Bartholomew, where she with her cargo was subse *61 quently sold by the captors. On the 29th of August, 1800, the French tribunal of commerce and prizes at Basse Terre, Guadeloupe, unlawfully condemned the vessel and cargo, confirming the capture, and ordering the sale of the vessel.
If this were a proceeding against France before an international commission the question would be asked, What is the defense of France for this unlawful seizure and condemnation ?
The counsel for the United States answers that by Article IV of the treaty of 1800 (8 Stat. L., 178) “property captured, and not yet definitively condemned,” “shall be mutually restored;” that the tribunal of commerce and prizes at Basse Terre being without jurisdiction, the vessel and cargo were not “definitively condemned;” that the owners were thereby remitted to the remedy of having the vessel and cargo “restored.”
To the court it seems plain that by reasonable implication the fourth article of the treaty was intended to apply only to cases where the property could be restored. If a vessel was still within reach of the administrative arm of the French Government, France would hand her back to the owners, thereby extinguishing their demand, or at least greatly reducing the amount of it. If a vessel could not bo restored; if she had been destroyed, or lost, or sold, if the res had ceased to exist, the article of the treaty, unexecuted, no more extinguished a legal demand for indemnity than the giving of a note without paying it extinguishes the original indebtedness of an ordinary defendant.
If this court were a French tribunal, administering French law, it might perhaps be held that that law was obligatory and that this technical defense must be sustained; for an alien who voluntarily goes into French territory is bound to know the laws of France. But an American shipmaster upon the high seas is bound to know nothing more than the treaty into which his Goverment may have entered, and the general principles and obligations of international law. When the master of this vessel found his vessel condemned by a French court exercising jurisdiction of prize cases he might, or might not, according to his light, have objected to the jurisdiction. But he was not bound to know that the court which France apparently appointed to condemn his vessel was without jurisdic *62 tion. For the French Government to allow its courts to make condemnations which were not condemnations was but an aggravation of the injury done. Franco allowed these courts to act, and these courts continued to condemn American vessels. France was estopped from questioning their jurisdiction.
It is a' well-known rule in American and English prize courts that the rights of the owners of a vessel captured on the high seas are to be carefully guarded and maintained. Accordingly, it is required that the hatches be sealed, that the master remain upon the vessel, and that he be given an opportunity of being heard before the prize court which condemns his vessel. In this case none of these things appear on the face of the decree. Its recitals exclude the idea of the master having had an opportunity to assert his owners’ rights. Nothing appears, except that upon the report of a consular agent in a Swedish port the vessel and cargo were condemned. It was not the business of the American owners to carry the case before the Council of Prizes in order that the vessel might be condemned according to French law; thej^ -were not free agents in the matter; 'they were not bound to appear before the Council of Prizes and defend a case which the captors had not instituted there, neither were they bound to seek the French Government through the Council of Prizes, and go through the form of asking that their vessel be restored under the fourth article of the treaty after it had been condemned and sold and there was no material thing to be restored.
Apart from the treaty of 1800, it is the duty of the owners of a captured vessel to exhaust their legal remedy against the captors before they can assert a liability on the part of the belligerent Government whose privateers have seized their goods. But it is also the duty of the belligerent Government to furnish them with a tribunal in which they can exhaust their remedy. We have heretofore held with regard to these West Indian captures of small American vessels that the masters were not bound to travel round the world in search of an appellate jurisdiction. They were bound to exhaust their reüiedy at whatever place the vessel was taken and condemned, and nothing more. If France did not provide appellate courts in distant places to correct the errors of inferior tribunals it was her responsibility. The American owners *63 •could not be compelled to do a grossly unreasonable thing for the protection of the French Government. The court now adheres to those decisions.
The order, of the court is that the conclusions heretofore filed are amended by adding thereto “finding vm,” nowfiled; and the defendant’s motion for a new trial is overruled; and the conclusions of the court will be reported to Congress with a copy of this opinion.
This order is extended and will apply to the cases of the schooner Abigail, Perkins, master, and the brig Dove, Goodhue, master.